DECISION AND JUDGMENT ENTRY
{¶ 1} Joseph Hofer appeals his rape conviction in the Adams County Common Pleas Court. On appeal, Hofer contends that the trial court erred when it refused to instruct the jury on the lesser-included offense of gross sexual imposition. Because the evidence presented at trial would not reasonably support both a rape acquittal and a conviction of gross sexual imposition, we disagree. Hofer next contends that he did not receive the effective assistance of counsel as guaranteed under theSixth and Fourteenth Amendments to the United States Constitution. Because Hofer failed to satisfy the first prong of the two-pronged test of Strickland v. Washington (1984), 466 U.S. 668, we disagree. *Page 2 
Accordingly, we overrule Hofer's two assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} An Adams County Grand Jury indicted Hofer for rape in violation of R.C. 2907.02(A)(1)(b) (B), with the additional finding that the victim was less than ten years old, a felony of the first degree. Hofer entered a not guilty plea and the case proceeded to a jury trial.
 {¶ 3} Hofer moved for a mistrial after he claimed that the state intentionally showed a sexually suggestive photo of the victim with her legs open to the jury. The state claimed that the split second showing of the fully clothed victim was inadvertent. The court granted Hofer's motion for a mistrial but stated in its judgment entry "that it is the Court's belief, that the State of Ohio did not intend to provoke a Mistrial, and therefore Retrial is not barred." Later, after the seating of a second jury, the case proceeded to trial.
 A. State's Version of the Facts at Second Trial {¶ 4} Hofer lived with Charity Nelson (hereinafter "Mother") and their two children. Their two-year-old daughter was the victim.
 {¶ 5} One early afternoon in 2005, Mother returned home to find Hofer with the victim on the sofa. She said, "When I walked in, I saw him on the couch, with just a blanket on, and he had . . ., [victim] was, she was uh, she was naked, and she was . . ., he had her on his face." She explained, "He had her facing the other wall, with her feet towards his stomach, and her genitals were up on his face." The Mother defined genitals as "vagina." She said that she could tell that *Page 3 
he had an "erection" because the blanket was "poofed up." She said that Hofer had one hand on the victim's back and one hand down under the blanket.
 {¶ 6} The Mother confronted Hofer and then left with their children. She immediately told her mom, who is a nurse, about the incident. She said that her "uncle and papaw" reported the incident to the Winchester Police Department. The Mother's mom drove the Mother and victim to the hospital emergency room for a rape examination.
 {¶ 7} During a taped interview played to the jury, Hofer admitted to Winchester Police Chief Phillip Patton, Jr. and Detective Jim Hietkemper of the Adams County Sheriff's Department that he stuck his tongue in the victim's vagina. He further admitted to Chief Patton and Detective Hietkemper that, during the incident with his daughter, he got an erection and ejaculated into his underwear. Hofer said that he had a flaw in judgment. At some time during or after the interview, he wrote an apology letter and said that he was sorry for sticking his tongue in his daughter's vagina.
 {¶ 8} At the hospital, Mother and victim saw Amiee Sundeen, who was a registered nurse and a Sexual Assault Nurse Examiner (hereinafter "SANE"), for a rape exam. However, nurse Sundeen's training did not include sexual assaults of young children. Thus, she referred the victim to Children's Hospital in Cincinnati for a children's sexual assault exam and made all the arrangements.
 {¶ 9} Mother took the victim to Children's Hospital that same evening. They saw Mary Pat Burke, a registered nurse and a SANE nurse. After examining the victim, Nurse Burke did not find any evidence of sexual abuse. *Page 4 
She said that her finding was not uncommon when oral sex was the alleged sexual assault. She said that if the victim urinated after the incident, then that event could wash the evidence away. The Mother said that the victim urinated two or three times between the assault and the examination.
 {¶ 10} Dan Laux, from BCI, verified that Hofer's underwear contained sperm. Linda Eveleth, also of BCI, verified that the sperm was consistent with Hofer's DNA.
 B. Hofer's Version of Facts at Second Trial {¶ 11} Hofer did not testify. He called one witness, Charles Hofer, his oldest brother. His brother testified that Hofer and Mother "fought like cats and dogs" during their relationship. He stated that he personally "broke up a couple [of] shouting matches." He further stated that he observed the violence of Mother when she picked up the baby's playpen and threw it at his brother. In addition, he said that at the time of the incident, Hofer was in the process of arranging to go to Delaware to live with a new girlfriend.
 {¶ 12} Earlier, through cross-examination of the state's witnesses, the Mother admitted that she only saw Hofer's face on the victim's vagina. SANE Nurse Burke testified that she could find no evidence of sexual assault. While Detective Hietkemper would not admit that he put words in Hofer's mouth during the interview, he did admit that he did most of the talking and that "there was a lot of silence on Mr. Hofer's part." The detective never asked Hofer during the interview to define or clarify what Hofer meant when he used the word "vagina" or *Page 5 
vagina cavity. He also did not tell Hofer the legal or medical definitions of those terms.
 {¶ 13} The evidence further showed that Hofer feared for his safety after the incident. Mother's father or step-father came outside of Hofer's apartment with a baseball bat. Some of Mother's other relatives were upset with Hofer, including Mother's brother. Hofer stated during the taped interview that, for his own safety, he would have to leave the area.
 C. Jury Verdict, Sentencing, Appeal {¶ 14} The jury returned a verdict of guilty as charged. The court accepted the guilty verdict and sentenced Hofer accordingly.
 {¶ 15} Hofer appeals his rape conviction and asserts the following two assignments of error: I. "The trial court erred when it refused to instruct the jury on the lesser included offense of gross sexual imposition." And II. "Hofer's counsel rendered ineffective assistance of counsel, and violated his rights under the Sixth andFourteenth Amendments to the United States Constitution."
 II. {¶ 16} Hofer contends in his first assignment of error that the trial court erred when it refused to instruct the jury on the lesser-included offense of gross sexual imposition.
 {¶ 17} The state charged Hofer with rape under R.C. 2907.02(A)(1)(b), which states that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other *Page 6 
person." R.C. 2907.02(B) provides that a violation of this section is a felony of the first degree and where the victim is less than ten years of age, the court shall imprison the defendant for life.
 {¶ 18} ?`Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A). However, penetration is not necessary to commit cunnilingus; it "is completed by the placing of one's mouth on the female's genitals." State v. Lynch, 98 Ohio St.3d 514, 2003-Ohio-2284, ¶ 86.
 {¶ 19} The court refused to give a gross sexual imposition instruction, under R.C. 2907.05(A)(4), which states, "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." R.C.2907.05(B) provides that whoever violates this section is guilty of a felony of the third degree. The maximum penalty is a five-year prison term. See R.C. 2929.14(A)(3).
 {¶ 20} ?`Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). *Page 7 
 {¶ 21} In reviewing a trial court's refusal to give a jury instruction on a lesser-included offense, we employ a two-tiered analysis.
 {¶ 22} First, we must determine whether the offense for which the instruction is requested is a lesser-included offense of the charged offense. To do so, we must assess whether "(i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus.
 {¶ 23} Here, the state agrees with Hofer that gross sexual imposition is a lesser-included offense of rape. We agree and find that gross sexual imposition, R.C. 2907.05(A)(4), is a lesser-included offense of rape, R.C. 2907.02(A)(1)(b). See, also, State v. Johnson (1988),36 Ohio St.3d 224, paragraph one of the syllabus (holding that "[g]ross sexual imposition, R.C. 2907.05(A)(3), is a lesser included offense of rape, R.C. 2907.02(A)(3) [now R.C. 2907.02(A)(1)(b)].").
 {¶ 24} Second, when the Deem test is met, we then examine whether the record contains evidentiary support upon which a jury could reasonably acquit the defendant of the greater offense and convict him on the lesser offense. State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus.
 {¶ 25} Hofer maintains that the evidence supported a rape acquittal and a gross sexual imposition conviction. We disagree. *Page 8 
 {¶ 26} The trial court has discretion in determining whether the record contains sufficient evidentiary support to warrant a jury instruction on the lesser-included offense, and we will not reverse that determination absent an abuse of discretion. See, e.g., State v.Endicott (1994), 99 Ohio App.3d 688, 693; U.S. v. Ursary (1997), 109 F.3d 1129; see, also, State v. Davis (1992), 81 Ohio App.3d 706, 714.
 {¶ 27} The Supreme Court of Ohio has held that when the evidence for rape included a defendant's confession that he placed his tongue in the child victim's vagina, the trial court did not have to give a jury instruction on the lesser included offense of gross sexual imposition because contact between the defendant's mouth and the victim's vagina completed the act of cunnilingus, and thus rape. Lynch, supra, at ¶ 86.
 {¶ 28} Hofer contends, however, that Lynch does not apply in this case because the victim's Mother's family members threatened him to the point that he feared for his safety. Hence, he concludes that the jury could have reasonably concluded that any confession he made was for the purpose of remaining in jail for protection. And, if the jury did not believe his confession, then the jury could further find that Mother's testimony only showed that his face, not his mouth, had contact with the victim's vagina. Consequently, he claims once the jury reasonably reached these two conclusions, then the jury could reasonably acquit him of rape and convict him of gross sexual imposition.
 {¶ 29} We are not persuaded. If Hofer wanted protection, then jail is not his only means of safety, nor the most logical means for protection. Many people *Page 9 
in our society worry about their safety, but they do not confess to criminal activity in an attempt to be placed in jail for protection. In addition, Hofer stated during his taped interview that, for his safety, he would have to leave the area. He did not say anything about wanting to go to jail for safety reasons.
 {¶ 30} As such, we find that a reasonable jury would conclude that any confession Hofer made was not for the purpose of remaining locked up for protection. The jury was not incorrect in believing his confession. Therefore, we cannot find that the jury could reasonably acquit Hofer of rape and convict him of the lesser offense of gross sexual imposition. Consequently, we find that the trial court did not abuse its discretion by refusing to give the gross sexual imposition instruction.
 {¶ 31} Accordingly, we overrule Hofer's first assignment of error.
 III. {¶ 32} Hofer contends in his second assignment of error that he had ineffective assistance of counsel at trial. He claims that his counsel failed to: (1) object to his confession to law enforcement, including his letter of apology; and (2) move to dismiss the indictment on double jeopardy grounds.
 {¶ 33} The United States Supreme Court holds that "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." Strickland v. Washington (1984),466 U.S. 668, 684. "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." Id. at 685. As this court has stated, "effective counsel is one who `plays the role necessary *Page 10 
to ensure that the trial is fair.'" State v. Wright, Washington App. No. 00CA39, 2001-Ohio-2473, citing Strickland at 685. Therefore, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id., citing Strickland at 685-686.
 {¶ 34} In showing his attorney's ineffectiveness, Hofer must show two things: (1) "that counsel's performance was deficient[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment[;]" and (2) "that the deficient performance prejudiced the defense[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland at 687.
 A. {¶ 35} Hofer first contends that his counsel should have objected to the admission of his confession. He asserts that the state failed to produce any substantive evidence of the corpus delicti of the crimes, and therefore that the trial court would have sustained an objection.
 {¶ 36} The corpus delicti of a crime is essentially the fact of the crime itself. It is comprised of "(1) The act [and] (2) the criminal agency of the act." State v. Maranda (1916), 94 Ohio St. 364, paragraph one of the syllabus. See, also, State v. Edwards (1976),49 Ohio St.2d 31, 34; State v. Van Hook (1988), 39 Ohio St.3d 256, 261. The state must produce independent evidence of the corpus delicti of a crime before the court may admit an extrajudicial confession. *Page 11 Maranda at paragraph two of the syllabus; State v. Haynes (1998),130 Ohio App.3d 31, 34.
 {¶ 37} "The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case. It is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged." Id. That evidence may be direct or circumstantial. Id. at 371; State v. Nicely (1988),39 Ohio St.3d 147, 154-155; State v. Clark (1995), 106 Ohio App.3d 426, 431.
 {¶ 38} In State v. Ledford (Jan. 24, 2000), Clinton App. No. CA99-05-014, the defendant confessed to police that he raped a five-year-old boy. The child described the rape to his mother and other witnesses but recanted his statements at trial. Although a medical examination of the child revealed no evidence of rape, the trial court found that the state produced some evidence tending to prove the material elements of rape. Specifically, the mother testified that her child spent the night at the defendant's apartment, that the child made a statement which caused her to call the police and take him to the hospital, and that the hospital staff examined the child's genitals.
 {¶ 39} Here, as in Ledford, the victim's Mother's testimony contains some evidence of the elements of Hofer's crime. As she entered the apartment, she saw Hofer covered only with a blanket. He appeared to have an erection. She saw her naked two-year-old daughter on top of Hofer with her legs down towards Hofer's stomach and her vagina up on Hofer's face. Based on what the mother *Page 12 
saw, she testified that she talked to her family, which led to a call to police and a medical examination of the child by a qualified SANE nurse.
 {¶ 40} We find that the foregoing constitutes some evidence outside of the confession that tends to prove some material elements of rape. SeeHaynes, supra. Therefore, we cannot find that Hofer's failure to object to the confession, including the letter of apology, was deficient under the first prong of the Strickland test.
 B. {¶ 41} Hofer next contends that his counsel should have moved to dismiss the indictment on double jeopardy grounds after the mistrial. He claims that the prosecutor intentionally showed a sexually suggestive picture of the victim to the first jury that caused defense counsel to move for the mistrial.
 {¶ 42} The Supreme Court of the United States holds that "the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial."Oregon v. Kennedy (1982), 456 U.S. 667, 679. See, also, State v.Loza (1994), 71 Ohio St.3d 61, 70; State v. Greene, Mahoning App. No. 02CA122, 2004-Ohio-1540, ¶ 59.
 {¶ 43} Here, the trial court found that the state did not intentionally show the picture to the jury. Specifically, the trial court cited the Oregon case in its judgment entry granting Hofer's motion for a mistrial when it found "that it is the *Page 13 
Court's belief, that the State of Ohio did not intend to provoke a Mistrial, and therefore Retrial is not barred."
 {¶ 44} When the mishap occurred, the trial court properly asked the state some pointed questions before it granted Hofer's motion for a mistrial, finding that the state did not intentionally show the picture to the jury. "The trial court, having found that the prosecutor did not act with the design to create a mistrial, must be afforded deference in that finding." State v. Knotts (Sept. 19, 1991), Washington App. No. 90CA4, citing Oregon at 679.
 {¶ 45} The record shows that the state indicated that the "split second" display of the photo occurred only because of a technical malfunction involving the computer projector and that it was "inadvertent." The picture showed the victim fully dressed. Her legs were apart but she was wearing a diaper. Further, in the retrial, the court admitted the photo into evidence. As such, we find that these facts support the trial court's finding that the prosecutor's conduct was not calculated to manipulate Hofer into seeking a mistrial. Therefore, Hofer's retrial was not barred by the prohibition against double jeopardy. Consequently, we cannot find that Hofer's failure to move the court to dismiss the indictment on double jeopardy grounds was deficient under the first prong of the Strickland test.
 {¶ 46} Accordingly, we overrule Hofer's second assignment of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 14 
 JUDGMENT ENTRY
It is ordered that this JUDGMENT BE AFFIRMED and that Appellant shall pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion. *Page 1