DECISION AND JUDGMENT ENTRY
{¶ 1} W.B. appeals the judgment of the Highland County Juvenile Court finding him delinquent of charges of rape and gross sexual imposition. He contends that the trial court should have suppressed his confession because he was a "suspect" at the time of his interview at the county Justice Center and the detective never advised him of hisMiranda rights. However, in response to a request by a caseworker, W.B. voluntarily appeared at the Justice Center with his mother; the interrogating officer told him he was free to leave at anytime; there is no evidence of coercion or overreacting; the questioning lasted approximately one hour; and W.B. left after the interview. Thus, we conclude W.B. was not "in custody" at the time of his interview and a reasonable juvenile in W.B.'s position would have felt free to leave. Because Miranda only applies to custodial interrogation, the trial court properly denied the motion to suppress his confession. *Page 2 
 {¶ 2} In his second assignment of error, W.B. contends that the trial court erred in admitting those portions of his confession where he admitted to committing multiple sexual acts, including digital penetration, with the victim. He contends that the State failed to produce independent evidence of the corpus delicti of the crimes because it failed to show that he committed more than one sexual act or that penetration occurred. However, the State clearly satisfied the minimal foundational requirement of the corpus delicti rule, i.e., it providedsome evidence outside W.B.'s confession that tends to establishsome material elements of the allegations of rape. The victim testified that when she was 5 years old, her brother, W.B., touched her "privates" with his finger and that it "hurt." This statement implies penetration. The evidence also showed that S.H.'s paternal grandmother noticed that the victim's vaginal area was red, another indication that sexual conduct may have occurred.
 {¶ 3} But the State's success in providing independent evidence of the existence of more than one instance of sexual misconduct is not so clear. The victim, who was only six years old at the trial, testified, "He's not touched me one, only time[.]" in response to the question, "Did he touch you more than one time?" This answer is subject to different interpretations. It could mean, "No, he only touched me once." Or, it could also reasonably be construed to say, "No, he didn't touch me only once." Because of the de minimis nature of the rule and we are dealing with a six-year-old child who was clearly intimidated due to the circumstances, we conclude her response tends to establish the existence of multiple sex acts. We do so in light of the Supreme Court of Ohio's admonishment against applying the rule with "dogmatic vengeance." Based on this corroborating evidence, we conclude the trial court's finding that the State satisfied the *Page 3 
corpus delicti rule is supported by some competent credible evidence. Thus, the court properly admitted W.B.'s entire confession.
 {¶ 4} In his third assignment of error, W.B. contends that his convictions are based on insufficient evidence because the State failed to prove the corpus delicti of the crimes and failed to produce affirmative evidence that the victim was not his spouse. However, because the State satisfied the corpus delicti rule, W.B.'s entire confession was properly admitted as substantive evidence against him. W.B. admitted that he engaged in sexual activity with his 5-year-old sister on several different occasions and that the activity progressed over time. He admitted that he touched her vaginal area with his hand and penis and also gave details about another incident involving digital penetration. Moreover, the State presented strong circumstantial evidence that the victim was not his spouse; the victim identified W.B. as her brother and testified that he sexually assaulted her when she was 5 years old. Viewing this evidence in a light most favorable to the prosecution, we believe that the court could have found beyond a reasonable doubt all of the essential elements of the offenses charged.
 {¶ 5} In his fourth assignment of error, W.B. contends that his convictions are against the manifest weight of the evidence because his confession was unreliable. W.B. argues that he recanted, claiming that that he has a "learning disability" and that he was intimidated. However, the court heard testimony from several witnesses, including W.B., concerning the circumstances surrounding his confession. There is no evidence that he was threatened, mistreated, or induced to confess. And although W.B. testified that he did not understand what was happening, the trial court was in the best position to judge his credibility. Because the court could properly believe the State's evidence and *Page 4 
reasonably discount his recantation, we cannot say that it clearly lost its way in finding him guilty.
 {¶ 6} In his fifth assignment of error, W.B. argues that the court improperly admitted other acts evidence when it permitted his mother to testify about incidents involving his inappropriate touching of girls at school. However, the trial court found that despite W.B.'s counsel failure to object, the testimony was inadmissible and stated that it would not consider it for any purpose. And the defense elicited the same evidence from another witness during cross-examination. Because W.B. fails to demonstrate any error, plain or otherwise, his argument lacks merit.
 {¶ 7} In his sixth assignment of error, W.B. contends that the trial court erred when it sentenced him to separate terms of commitment for his convictions for rape and gross sexual imposition because the crimes were allied offenses of similar import that should have merged. He bases this contention on the argument that the State failed to prove the corpus delicti of more than one crime. However, the evidence presented at trial showed that W.B. engaged in sexual activity with the victim on several different occasions. Because the evidence demonstrates that W.B. committed the offense of rape, i.e., digital penetration, and then on a different occasion committed the offense of gross sexual imposition, i.e., he touched her vagina with his penis, his convictions are not based on the "same conduct" and thus do not merge.
 I. The Procedural History and Facts {¶ 8} The State filed a complaint against W.B. in the Highland County Court of Common Pleas, Juvenile Division, alleging him to be delinquent of one count of rape, in violation of R.C. 2907.02(A)(1)(b), and one count of gross sexual imposition, in violation *Page 5 
of R.C. 2907.05(A)(4). At trial, counsel later made an oral motion to suppress W.B.'s confession. The court reserved ruling on the motion until it heard the evidence and the matter proceeded to trial.
 {¶ 9} S.H., who was six years old at the time of trial, identified W.B. as her brother and testified that "he touched me down here" with his finger and that it "hurt." She stated that the area "down there" was called "the privates." She also indicated through gesture that he touched her private parts with his finger. She testified that she was five years old at the time and that it happened in a bedroom at her mother's house. When asked if he touched her more than one time, she responded: "He's not touched me one, only time." And when asked if his finger touched her on the inside or outside, she said "outside."
 {¶ 10} Sara Smallwood, a caseworker with the Clinton County Children Services ("CCCS"), testified that in February 2008, CCCS received a report concerning allegations that 15-year-old W.B. was sexually abusing his 5-year-old sister, S.H. After interviewing S.H. and other family members, Smallwood contacted Detective Kirk. Smallwood testified that she and Detective Kirk interviewed W.B. in a conference room at the Justice Center after obtaining permission from his mother. She testified that Detective Kirk advised W.B. that he was not under arrest and was free to go at any time. She also testified that W.B. indicated that he understood and referenced the television show "COPS." She stated that during the interview, which lasted less than an hour, W.B. never requested to speak to his mother, who was waiting in the hallway.
 {¶ 11} According to Smallwood, W.B. admitted that he had touched S.H. in a sexually inappropriate manner. She testified that he described one incident where he *Page 6 
"jacked off in between her legs and then sent her out of the room so he would finish up." He described another incident where he "fingered" her and demonstrated with his hand how he moved his finger; he later explained that his finger went inside of her up to his first knuckle. On one occasion his brother walked in and "caught him." Smallwood testified that W.B. indicated that one incident occurred while the family was living on Taylorville Road and another occurred while they were living in an apartment in Rainsboro. She stated W.B. indicated that the last time he had touched S.H. was in December 2007. On cross-examination she indicated W.B. had admitted to getting in trouble at school for improperly touching a female student.
 {¶ 12} S.H.'s paternal grandmother and caregiver, testified that in January 2008, after S.H. had returned from a four-day visit at her mother's house, she was giving S.H. a bath and noticed that her vaginal area was red. After asking her what happened, the grandmother called and spoke to S.H.'s and W.B.'s mother and then told S.H. that she was not allowed to go back to her mother's house. She testified that S.H.'s father took S.H. to the doctor the next day for a previously scheduled appointment, but admitted that nobody mentioned the vaginal redness to the doctor. She testified that later that week her attorney advised her to contact children services, which she did.
 {¶ 13} During her testimony, W.B.'s mother referenced prior incidents involving W.B. and girls at school. Counsel for W.B. failed to object. On cross-examination, the mother testified that she took her son to the Justice Center the day he was interviewed. She testified that Smallwood and Detective Kirk first interviewed her and then asked her for permission to talk to W.B. She testified that she asked them whether she needed to *Page 7 
get an attorney either for herself or W.B. and that she thought Smallwood responded that she did not need one.
 {¶ 14} Detective Denny Kirk with the Highland County Sheriff's Office testified that he became involved in the investigation in February 2008 after receiving information from Smallwood, who later made arrangements for the family to come in for an interview. Detective Kirk testified that he interviewed W.B. at the Sheriff's Office in a conference room off the lobby area. He stated that prior to the interview, he spoke with W.B.'s mother and explained that he wanted to speak to W.B. about some allegations against him involving S.H. He testified that she agreed and that at no point did she ask for an attorney. He stated that his interview with W.B. began at 12:17 p.m. and ended at 1:13 p.m. He testified that he explained the purpose of the interview to W.B. and advised him that his mother was in the lobby, he was not in custody, he could leave the room at any time, and he did not have to answer any of his questions. According to Detective Kirk, W.B. indicated that he understood and stated that he watched "COPS" and knew things he said could be used against him, at which point Detective Kirk agreed. Detective Kirk testified that at no point during the interview did W.B. ask for his mother or an attorney. He also testified that he was dressed in plain clothes and that he never displayed his gun or handcuffs.
 {¶ 15} Detective Kirk testified that after initially denying any wrongdoing, W.B. later admitted that he had engaged in sexual activity with S.H. on several occasions and that the activity had progressed over time. Detective Kirk testified that W.B. indicated that "things started" when they lived in their Rainsboro home and continued at different places, including their homes near Rockey Fork Lake and on Taylorville Road. According to *Page 8 
Detective Kirk, W.B. stated that the activity initially started with him picking her up and touching her between her legs on top of the clothing; the activity then progressed to W.B. actually touching S.H. with his hand and later placing his penis between her legs on her bare vagina. According to Detective Kirk, W.B. indicated that his penis got "stiffy" and that he laid it between her legs on the outside of her vagina. W.B. described one incident where he became excited enough that he was going to ejaculate, so he asked her to leave and went to the bathroom and "finished up." Detective Kirk further testified that W.B. indicated that he also inserted his finger into her vagina; W.B. demonstrated with his hand that he had inserted his finger into S.H. up to his first knuckle. He testified that W.B. indicated that the last time he touched her was in December 2007.
 {¶ 16} W.B. testified on his own behalf and denied ever touching S.H. in a sexually inappropriate manner. He testified that prior to his interview, Detective Kirk and Smallwood never explained to him the purpose of the interview and that at some point he became "scared" and was "just agreeing" with them because he was "not sure what was going on." He testified that he did not ask for his mother because did not want to "make things worse." He testified that he was in the 9th grade, but that he had previously failed two grades and that he was in special education classes; he stated that he has difficulty learning and understanding things. On cross-examination, W.B. admitted that he demonstrated to Detective Kirk and Smallwood with his hand how he inserted his finger into S.H.'s vagina. He also admitted that he gave specific details about the sexual activity, but claimed that he was "making it up" to get out of the "ordeal" quicker. He testified that Detective Kirk never showed him his gun, pushed him around, yelled at him, displayed handcuffs, or threatened him in any way. He also stated that he never told *Page 9 
Detective Kirk or Smallwood that he had any learning disability or that he did not understand.
 {¶ 17} The court overruled W.B.'s motion to suppress from the bench and found W.B. delinquent of both counts. At the dispositional hearing, the court ordered that he be committed to the Ohio Department of Youth Services for a minimum term of two years on the rape count and a minimum term of six months on the gross sexual imposition count, to run consecutively. W.B. now appeals.
 II. Assignments of Error {¶ 18} W.B. presents six assignments of error:
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN NOT SUPPRESSING THE JUVENILE-APPELLANT'S CONFESSION (8/14/08 Tr. 64-95 and 111-17).
SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN ADMITTING THAT PORTION OF THE JUVENILE-APPELLANT'S CONFESSION TO PENETRATION AND MULTIPLE ACTS IN THE ABSENCE OF THE CORPUS DELICTI CONCERNING PENETRATION AND MULTIPLE ACTS OF ALLIED OFFENSES OF SIMILAR IMPORT (Id.).
THIRD ASSIGNMENT OF ERROR
 THE ADJUDICATION OF DELINQUENCY IS BASED UPON INSUFFICIENT EVIDENCE (Id. pp. 13-14, passim).
FOURTH ASSIGNMENT OF ERROR
 THE ADJUDICATION OF DELINQUENCY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE (Id. passim).
FIFTH ASSIGNMENT OF ERROR
 IMPROPER OTHER-ACTS EVIDENCE WAS INTRODUCED TO THE PREJUDICE OF THE JUVENILE-APPELLANT (Id. pp. 57-58). *Page 10 
SIXTH ASSIGNMENT OF ERROR
 THE JUVENILE-APPELLANT WAS TWICE PLACED IN JEOPARDY AND OTHERWISE IMPROPERLY SENTENCED BY THE IMPOSITION OF CONSECUTIVE TERMS OF COMMITMENT TO THE DEPARTMENT OF YOUTH SERVICES FOR ALLIED OFFENSES OF SIMILAR IMPORT INVOLVING NEITHER SEPARATE INCIDENTS NOR SEPARATE AREAS OF THE VICTIM'S BODY (Id. passim; 8/18/08 Tr. Passim; Final Judgment Entry).
 III. Motion to Suppress {¶ 19} In his first assignment of error, W.B. contends that the trial court should have suppressed his statements to Detective Kirk because he was a "suspect" at the time of his interview and Detective Kirk never advised him of his Miranda rights. The State disagrees, arguing that because W.B. was not "in custody" during the questioning, Detective Kirk was not required to read him the Miranda warning.
 A. Standard of Review {¶ 20} When considering an appeal from a trial court's decision on a motion to suppress evidence, we are presented with a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 328, 332,713 N.E.2d 1. In a hearing on a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Roberts,110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100, citing State v.Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972; State v.Dunlap (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988, certiorari denied (1996), 516 U.S. 1096, 116 S.Ct. 822, 133 L.Ed.2d 765. Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. See State v. Fanning (1982),1 Ohio St.3d 19, 20, 437 N.E.2d 583. Accepting those facts as true, we must independently determine whether the *Page 11 
trial court reached the correct legal conclusion, i.e., whether they satisfy the appropriate legal standard. Roberts, supra, at ¶ 100, citingState v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.
 B. Miranda/Custodial Interrogation {¶ 21} In Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694, the United States Supreme Court held that statements made during custodial interrogation are admissible only upon a showing that law enforcement officials had followed specified procedural safeguards.Miranda defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."Miranda, supra; see, also, Stansbury v. California (1994), 511 U.S. 318,114 S.Ct. 1526, 128 L.Ed.2d 293 and Oregon v. Mathiason (1977),429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2 714. Thus, Miranda protection attaches only where there has been such a restriction on a person's freedom as to render him in "custody" — the fact that questioning took place at the police station is not dispositive. See Oregon v. Mathiason at 495.
 {¶ 22} The question of whether an individual is "in custody" is a mixed question of law and fact entitled to independent review. SeeThompson v. Keohane (1995), 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383. In deciding whether the individual was in custody, the reviewing court focuses on "the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury at 322; see, also, Berkemer v.McCarty (1984), 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317
(stating that the relevant inquiry is how a reasonable person in the individual's position would have understood the situation). See, also,State *Page 12 v. Ferris, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 L.Ed.2d 985, ¶ 14 (stating the "only relevant inquiry" * * * is "how a reasonable man in the suspects position would have understood his situation.").
 {¶ 23} In the past we have incorporated a non-exhaustive list of factors courts should use to answer this question. In State v.Boyd, Adams App. No. 02CA744, 2003-Ohio-903, at ¶ 9, we included some factors that are prone to result in a subjective analysis, i.e. the age, mentality and prior criminal experience of the accused. See, also,In re Sturm, Washington App. No. 05CA35, 2006-Ohio-7101, at ¶ 34. However, in Yarborough v. Alvarado (2004), 541 U.S. 652, the Supreme Court of the United States indicated that a subjective inquiry was improper in this context. The Alvarado court instructed lower courts to avoid factors that focus "too much on the suspect's subjective state of mind and not enough on the `objective circumstances of the interrogation.'" Id. at 668-69, quoting Stansbury, supra. They did so because a subjective analysis places a burden upon the police to anticipate the faculties or idiosyncrasies of those whom they question. Id. at 662. They also indicated reliance on prior history is misplaced because officers will not always know a suspect's prior interrogation history. Likewise even where they do, it would require the police to speculate about the effect such an experience would have on a reasonable person's objective belief that he was free to leave. Id. at 668. Accordingly, we now renounce the subjective factors that we identified in Boyd and Sturm and restrict our analysis to an objective test.
 {¶ 24} The reviewing court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Page 13 California v. Beheler (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, quoting Mathiason at 495. "[T]he mere fact that an investigation has focused on a suspect does not trigger the need for Miranda warnings in noncustodial settings." Minnesota v. Murphy (1984), 465 U.S. 420, 431,104 S.Ct. 1136, 79 L.E.2d 409, citing Beckworth v. U.S. (1976),425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1.
 {¶ 25} The trial court overruled W.B.'s oral motion to suppress, finding:
 As to the, uh, oral motion to suppress, by Counsel for the juvenile, the Court will overrule and deny the same. It's very clear, the evidence is very compelling that, uh, [W.B.] was not in the custody of law enforcement when he was questioned at the Justice Center. His mother voluntarily brought him there. Uh, Detective Kirk made it very clear, uh, which [W.B.], co-operated, [sic] there were no threats, no promises, uh, and it was a total, voluntary, uh, situation by [W.B.] to be at the Justice Center, again, to be brought in by his mother. And as Detective Kirk stated, he was free to leave at any time and did not have to answer any questions. So, Miranda does not apply in that scenario and, um, we, I find that the statements made, [W.B.], by you, the end of February, of this year, I believe testimony was, somewhere around February 29th, um was voluntary and will not be suppressed. So, that motion, by your attorney on your behalf is overruled and denied.
 {¶ 26} After viewing the totality of the circumstances, we agree with the trial court that a reasonable juvenile in W.B.'s position would have understood that he was not in custody at the time of the interview. First, W.B.'s mother, not the police, brought him to the Justice Center. And she did so at the request of a caseworker, not a detective. Prior to the interview, Detective Kirk advised W.B. that he was not in custody, he was not under arrest, and he was free to go at any time. While W.B. claims that he has difficulty learning and understanding, he never told Detective Kirk or Smallwood that he did not understand and never requested to speak to this mother, who was just outside the room. Despite his claims that he has a "learning disability," there is nothing in the record that indicates that a *Page 14 
reasonable person in his situation would lack the intelligence or maturity to understand when Detective Kirk advised him that he was free to leave at any time.
 {¶ 27} The interview was of relatively short duration, lasting less than an hour, and the evidence indicates it was not intense. It occurred in a conference room off the lobby area, Detective Kirk was dressed in plain clothes, and made no overt showing of authority beyond asking questions. Additionally, there is no evidence that W.B. suffered from any physical deprivation or mistreatment during the questioning, nor was he threatened or induced to confess. Thus, we conclude W.B.'s freedom of movement was not restrained to the degree associated with a formal arrest.
 {¶ 28} Based on our review of the record, we conclude that W.B.'s statements to Detective Kirk were not the product of custodial interrogation. Because W.B. was not in custody, Detective Kirk was not required to advise him of his Miranda warnings. In reaching this conclusion, we reject W.B.'s contention that State v. Buchholz (1984),11 Ohio St.3d 26, 462 N.E.2d 1222, holds that an individual is entitled to Miranda warnings prior to interrogation merely upon becoming a suspect. Buchholz simply provides that Miranda applies to both felony and misdemeanor offenses where custodial interrogation occurs. It did not obviate the need to find custodial interrogation. Id. at 28. See, also, Minnesota v. Murphy, supra, at 431. Accordingly, we overrule W.B.'s first assignment of error.
 IV. Corpus Delicti Rule and W.B.'s Confession {¶ 29} In his second assignment of error, W.B. contends that the trial court erred in admitting those portions of his confession where he admitted to multiple acts of sexual misconduct, including digital penetration. He contends that the State failed to produce any *Page 15 
independent evidence of the corpus delicti of the crimes. Specifically, he argues that the State failed to present any evidence outside his confession tending to show that he committed more than one sexual act against S.H. or that he committed the crime of rape, which requires penetration. He points out that S.H. testified that he only touched her once and that it happened on the "outside." Therefore, he argues that the trial court should have redacted those portions of his confession concerning multiple acts or penetration.
 {¶ 30} He also argues that rape and gross sexual imposition are allied offenses of similar import. Because he raises this argument as a separate assignment of error, we will address it later.
 A. Standard of Review {¶ 31} While many cases, including those from this district, have discussed the impact of the corpus delicti rule on the admission of extra judicial confessions, almost none of them (again, this district included) have explicitly addressed the proper standard of review. The parties do not address this issue and our abbreviated search reveals only a single case, State v. Lortz, Summit App. No. 23762,2008-Ohio-3108, that expressly identifies the standard it uses. InLortz, the Ninth District adopted an abuse of discretion standard when applying the corpus delicti rule to admissibility of a confession. Id. at ¶ 11. However, we adopt the less deferential standard using the manifest weight of the evidence review because we believe the preponderance of the evidence standard applies to determinations concerning preliminary questions of admissibility under Evid. R. 104(A).
 {¶ 32} In this context the corpus delicti rule is a foundational requirement for the admissibility of the confession. See State v.Van Hook (1988), 39 Ohio St.3d 256, 261, *Page 16 530 N.E.2d 883 (the purpose of requiring the evidence of the corpus delicti as a foundation for admitting a confession . . .). Evid. R. 104(A) provides that preliminary questions of admissibility, i.e., foundational requirements, are determined by the [trial] court, which is not bound by the rules of evidence, except for privilege, in making its decision. See, also, Gianelli Snyder, Baldwin's Ohio Practice, Evidence (2 Ed.), Section 104.4. As that treatise notes, "As a general rule, the `preponderance of the evidence' standard applies to determinations concerning preliminary questions, even in criminal cases [.]", citing our prior decision State v. Sibert 91994),98 Ohio App.3d 412, 421, 648 N.E.2d 861. See, also, Bourjailly v. United States (1987),483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144, cited in both Gianelli, supra, and Sibert. Thus, we review the trial court's factual findings in this regard by determining whether they are supported by some competent, credible evidence. Sibert at 421.
 B. The Body of the Crime {¶ 33} The corpus delicti of a crime is essentially the fact of the crime itself. State v. Hofer, Adams App. No. 07CA835, 2008-Ohio-242, ¶ 36; see, also, State v. Haynes (1998), 130 Ohio App.3d 31, 34,719 N.E.2d 576. It is comprised of "(1) The act [and] (2) the criminal agency of the act." State v. Maranda (1916), 94 Ohio St. 364,114 N.E. 1038, paragraph one of the syllabus. See, also, State v. Edwards (1976),49 Ohio St.2d 31, 34, 358 N.E.2d 1051, vacated on other grounds (1978),438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155; Van Hook, supra, at 261. "It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the corpus delicti, before such confession is admissible." Maranda
at paragraph two of the syllabus. In other words, the state must produce independent evidence of the corpus *Page 17 
delicti of a crime before the court may admit an extrajudicial confession. Hofer at ¶ 36, citing Maranda at paragraph two of the syllabus and Haynes at 34.
 {¶ 34} "The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case. It is sufficient if there issome evidence outside of the confession that tends to provesome material element of the crime charged." Maranda at paragraph two of the syllabus. (Emphasis sic); see, also, Edwards, supra. That evidence may be direct or circumstantial. Maranda at 371; State v. Nicely (1988),39 Ohio St.3d 147, 154-155, 529 N.E.2d 1236; State v. Clark (1995),106 Ohio App.3d 426, 431, 666 N.E.2d 308.
 {¶ 35} In Edwards, supra, the Supreme Court of Ohio noted the historical origins of the corpus delicti rule were designed to protect an accused from being convicted of a crime that never occurred. The court stated that, in light of the "vast number of procedural safeguards protecting the due-process rights of criminal defendants, the corpusdelicti rule is supported by few practical or social-policy considerations." (Emphasis sic.) Id. at 35-36. Accordingly, there is "little reason to apply the rule with a dogmatic vengeance." Id.; see, also, State v. Ferris (Jan. 29, 2001), Lawrence App. No. 00CA12,2001 WL 243424, at *6. The burden upon the state to provide some evidence of the corpus delicti is minimal. Edwards at 36; see, also, Van Hook, supra.
 {¶ 36} In State v. Ledford (Jan. 24, 2000), Clinton App. No. CA99-05-014, 2000 WL 127095, the Twelfth District Court of Appeals considered whether the state had proved the corpus delicti of the crime where the defendant was charged with raping a five-year-old boy. The boy, who did not have any physical signs of abuse, told his mother that the defendant had sucked on his penis. When later questioned by the police, the *Page 18 
defendant confessed that he had raped the boy. At trial, the boy recanted. In finding that the state produced some evidence tending to prove the material elements of rape, the court specifically noted that the state had provided testimony that the boy was six years old at the time of the offense and not the defendant's spouse. Moreover, the mother testified that her child spent the night at the defendant's apartment at the time of the offense, that the boy made a statement to her which caused her to call the police and then take him to the hospital, and that the hospital staff examined his genitals. The court found that such evidence satisfied the corpus delicti requirement for the rape charge.
 {¶ 37} We recently considered Ledford when addressing a similar argument in Hofer, supra. There, the defendant argued that his trial counsel was deficient for failing to object to the admission of his confession on the basis that the state had failed to produce any substantive evidence of the corpus delicti of the crime where he was charged with performing cunnilingus on a two-year-old girl. In concluding that the state presented some evidence outside of the confession that tended to prove some material elements of rape, we stated:
 Here, as in Ledford, the victim's Mother's testimony contains some evidence of the elements of Hofer's crime. As she entered the apartment, she saw Hofer covered only with a blanket. He appeared to have an erection. She saw her naked two-year-old daughter on top of Hofer with her legs down towards Hofer's stomach and her vagina up on Hofer's face. Based on what the mother saw, she testified that she talked to her family, which led to a call to police and a medical examination of the child by a qualified SANE nurse.
Hofer at ¶ 39.
 {¶ 38} In the present case, unlike in Ledford and Hofer, the victim actually testified concerning the rape allegations. S.H. testified that when she was 5 years old, her brother, W.B. touched her "down here" with his finger and that it "hurt." She stated that *Page 19 
the area "down there" was called "the privates." She also indicated through gesture that he touched her genitals with his finger. She stated that it happened in a bedroom at her mother's house. Moreover, the paternal grandmother testified that while giving S.H. a bath following a visit at her mother's house, she noticed that S.H.'s vaginal area was red. After asking S.H. what happened, the grandmother called and spoke to the children's mother, who testified that the grandmother called her and accused her son of touching S.H. Following this conversation with the mother, the grandmother told S.H. that she was not allowed to go back to her mother's house. Later that week, the grandmother met with her attorney, who advised her to contact children services, which she did. After interviewing S.H., Smallwood contacted Detective Kirk to schedule an interview with W.B. Looking at the totality of this evidence and considering the inferences that may logically be drawn from it, the trial court could properly conclude that W.B. inserted his finger into S.H.'s genitals. This inference is some evidence that tends to establish the penetration element of rape.
 {¶ 39} However, W.B.'s contention that the State failed to establish multiple acts, i.e., the gross sexual imposition allegations, is not so easily discounted. He contends S.H. testified that he touched her only once. Our review of the testimony leads us to a different conclusion because S.H.'s testimony is ambiguous at best. On direct examination, the prosecutor asked S.H., "Did he touch you more than one time?" S.H. responded, "He's not touched me one, only time." The trial court was dealing with a six-year-old witness who was intimidated by the proceeding and the presence of her brother, the accused, her mother and virtual strangers. Thus, it is difficult to say with any certainty whether her response meant, "No, he only touched me one time." Or, alternatively, "No, *Page 20 
he did not touch me only one time." While we would not expect most adults to speak in convoluted terms using a double negative to answer a simple "yes" or "no" question, the same cannot be said of the six-year-old victim in this situation. Because we were not there to glean the true meaning of her response from her tone, demeanor, body language, etc., we follow the Supreme Court's admonition inEdwards against applying the rule with "dogmatic vengeance." In other words, we leave it to the trial court to decide which of the two interpretations was more appropriate in light of the fact that a rational argument could be made for adopting either one. Because S.H.'s testimony could reasonably be construed by the trial court to indicate there was more than one incident of sexual contact, some evidence supports the finding that the minimal foundational requirement of independent corroboration was satisfied.
 {¶ 40} The trial court correctly concluded the State met the foundational requirements of the corpus delicti rule, and W.B.'s entire confession was properly admitted.[1] We overrule W.B.'s second assignment of error.
 V. Sufficiency of the Evidence {¶ 41} In his third assignment of error, W.B. contends that his convictions are based on insufficient evidence because the State failed to prove the corpus delicti of the crimes and failed to produce affirmative evidence that the victim was not his spouse.
 {¶ 42} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine *Page 21 
whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. See, e.g., State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus, citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. A sufficiency of the evidence challenge tests whether the state's case is legally adequate to satisfy the requirement that it contain prima facie evidence of all the elements of the charged offense. See State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Our evaluation of the sufficiency of the evidence raises a question of law and does not permit us to weigh the evidence. State v. Simms, 165 Ohio App.3d 83,2005-Ohio-5681, 844 N.E.2d 1212, at ¶ 9, citing Martin at 175.
 {¶ 43} The court found W.B. delinquent on one count of rape under R.C. 2907.02(A)(1)(b), which states: "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." "Sexual conduct" includes "without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another." R.C. 2907.01(A).
 {¶ 44} The court also found him delinquent on one count of gross sexual imposition under R.C. 2907.05(A)(4), which states: "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." *Page 22 
"Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person. R.C. 2907.01(B).
 {¶ 45} We have already concluded that the State presented sufficient independent evidence to satisfy the foundational requirement of the corpus delicti rule. And because his entire confession was properly admitted, W.B.'s statements to Smallwood and Detective Kirkwood could be used as substantive evidence against him. Based on the victim's testimony, W.B.'s confession, and all of the other circumstantial evidence, we conclude that the State presented sufficient evidence upon which the court could have reasonably found the essential elements of these offenses of rape and gross sexual imposition.
 {¶ 46} S.H. described an incident that occurred with W.B. at their mother's house when she was 5 years old. She testified that he touched her "privates" "down here" with his finger and that it "hurt." She stated that "down there" was her private parts. The evidence also shows that after Ms. Hines observed S.H.'s red vaginal area, S.H. made certain comments to her which prompted her to call and confront W.B.'s mother and ultimately contact children services. Then, based on statements S.H. made during her interview, Smallwood referred the matter to Detective Kirk, who interviewed W.B.
 {¶ 47} Furthermore, W.B. admitted that he had engaged in sexual activity with his sister on several different occasions and that the activity had progressed over time. He indicated that "things started" when they lived in their Rainsboro home and continued at different places, including their homes near Rockey Fork Lake and on Taylorville Road. He admitted that he started by touching her between her legs on top of the clothing and *Page 23 
later progressed to touching her bare vagina with his hand and later his penis. He described one incident where his penis got "stiffy" and that he laid it between her legs on the outside of her vagina. He also stated that he "jacked off" between her legs and then sent her out of the room so he could "finish up." He described another incident where he "fingered" her and demonstrated with his hand how he inserted his finger into her vagina up to his knuckle. He stated that the "last time" he touched her was in December 2007.
 {¶ 48} Thus, the State presented evidence that W.B. engaged in sexual activity with his 5-year-old sister on several different occasions. From the evidence presented, the court could reasonable conclude that W.B. committed the offense of rape when he engaged in sexual conduct, i.e. digital penetration, with his 5-year-old sister. The court could also have reasonably concluded that W.B. committed a separate offense of gross sexual imposition when, on a different occasion, he touched her vaginal area with his penis. And, while W.B. claims that there was no direct testimony that S.H. was not his spouse, the State presented strong circumstantial evidence to prove this element. The victim identified W.B. as her brother and testified the sexual activity occurred when she was only 5 years old; W.B. admitted that he was 15 years old when he sexually assaulted her. Viewing this evidence in a light most favorable to the State, the trial court could have reasonable found all of the essential elements to the crimes. Accordingly, we overrule W.B.'s third assignment of error.
 VI. Manifest Weight of the Evidence {¶ 49} In his fourth assignment of error, W.B. contends that his convictions are against the weight of the evidence because the victim testified he abused her "only one *Page 24 
time" and it was on the "outside." He also argues his confession is unreliable because he later recanted, claiming that he has a "learning disability" and was intimidated.
 {¶ 50} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, citing Martin at 175. A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. State v.Johnson (1991), 58 Ohio St.3d 40, 42, 567 N.E.2d 266; State v.Eskridge (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus.
 {¶ 51} Even in acting as a thirteenth juror we must still remember that the weight to be given evidence, and the credibility to be afforded testimony, are issues to be determined by the trier of fact. State v.Dye (1998), 82 Ohio St.3d 323, 329, 1998-Ohio-234, 695 N.E.2d 763;State v. Frazier (1995), 73 Ohio St.3d 323, 339, 1995-Ohio-235,652 N.E.2d 1000. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. Thus, only if the fact finder clearly lost its way and created a manifest miscarriage of justice will we interfere. *Page 25 
 {¶ 52} W.B.'s convictions are not against the manifest weight of the evidence. Based upon the facts we previously discussed, the State presented substantial direct and circumstantial evidence proving the essential elements of both the offenses of which W.B. was found delinquent. While W.B. argues that he recanted, claiming that he has a "learning disability" and that he was "scared," the court heard testimony from several witnesses concerning the circumstances surrounding his confession, including testimony from W.B. As we have already determined, there is no evidence to show that he was threatened, mistreated, or induced to confess. And the record fails to support W.B.'s assertion that he lacked the intelligence to understand what was happening. Moreover, determinations of credibility and weight of the testimony remain within the province of the trier of fact as long as they have some basis in reason and fact. See, State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The trial court was in the best position to judge W.B.'s credibility. Because the court could properly believe the State's evidence, including the confession, and reasonably discredit W.B.'s recantation, we cannot say that it clearly lost its way.
 {¶ 53} Given the victim's testimony, W.B.'s confession, and all of the circumstantial evidence presented in this case, any rational fact finder could have found, beyond a reasonable doubt, all of the essential elements of both the crimes charged. Accordingly, we overrule W.B.'s fourth assignment of error.
 VII. Other Acts Evidence {¶ 54} In his fifth assignment of error, W.B. contends that the court improperly admitted other acts evidence. W.B. argues that the court improperly permitted his mother to testify about prior incidents involving inappropriate touching of girls at school. He *Page 26 
claims that the testimony impeached his credibility, thus resulting in the court refusing to believe his denials of misconduct and recantation.
 {¶ 55} Our standard of review is the well-recognized rule that the admission of evidence is within the sound discretion of the trial court.State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. Franklin Cty. Sheriff'sDept. v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 498, 506,589 N.E.2d 24. When applying the abuse of discretion standard, we are not free to merely substitute our judgment for that of the trial court.In re Doe I (1990), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181.
 {¶ 56} Evid. R. 404(B) controls the use of other acts evidence and states:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 {¶ 57} The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. State v.Schaim (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661.
 {¶ 58} In response to the State's questioning, W.B.'s mother testified:
Q. Okay. One last question. Um, have you had concerns with [W.B.] and other girls at school?
A. Not really, uh, as in what he's being blamed for, no.
Q. Okay. What do you mean by that? *Page 27 
A. Uh, such as the rape and stuff like that. The other sexual conduct, or whatever it is.
Q. Right. So, but, something else?
A. Uh, he's went and done a couple of touchings (spelled assaid), as in, you know, the butt and stuff like that, but he's got in trouble and he knows not to do it.
 {¶ 59} W.B.'s trial counsel failed to object to this testimony at trial, waiving all but plain error. See State v. Loza (1994),71 Ohio St.3d 61, 75, 641 N.E.2d 1082. Our review of the record, however, shows no error, plain or otherwise.
 {¶ 60} First, defense counsel elicited testimony concerning the same conduct from Smallwood during cross-examination. Counsel asked for Smallwood's "recollection of the entire conversation" involving W.B.'s confession. In response, Smallwood recounted W.B.'s admission that he had gotten in trouble at school "for touching a girl." She provided a few additional details and at that point, the cat was out of the bag.
 {¶ 61} More importantly, in a bench trial, a court is presumed to have considered only the relevant, material, and competent evidence.State v. Bays (1999), 87 Ohio St.3d 15, 28, 716 N.E.2d 1126. And here, the court expressly indicated that, despite the lack of objection, the evidence was inadmissible and that it would not consider it for any purpose. Specifically, the court stated:
 I also want to state that there was some evidence submitted of [W.B.], maybe, possibly, having inappropriate contact or acts with other children at school. Totally inadmissible for this case. That should never have come out, although it wasn't objected to. Can't prove other acts. Can't prove there was a violation here of this case, by other acts, of similar nature, unless certain criteria was met, and that was not. So, I want to make the record VERY clear that those other acts and evidence are NOT being considered by this Court for ANY purpose, whatsoever. (Emphasis sic). *Page 28 
 {¶ 62} Based on the foregoing, we reject W.B.'s argument that the court improperly considered other-acts evidence to his detriment.
 VIII. Allied Offenses of Similar Import {¶ 63} In his sixth assignment of error, W.B. contends that the trial court erred in sentencing him both on his convictions for rape, in violation of R.C. 2907.02(A)(1)(b) and gross sexual imposition, in violation of R.C. 2907.05(A)(4) because the offenses are allied offenses of similar import.
 {¶ 64} R.C. 2941.25, Ohio's multi-count statute, provides in part:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all offenses, but the defendant may be convicted of only one.
 {¶ 65} W.B. bases his contention on the argument that the State failed to prove the corpus delicti of more than one crime and argues that the evidence shows that the sole incident involved only one area of the victim's body. As previously discussed, however, the State presented evidence that showed that W.B. engaged in sexual activity with the victim on more than one occasion. The evidence proved that W.B. touched her vaginal area with his penis and then on a different occasion digitally penetrated her vagina. Because his convictions for rape and gross sexual imposition arise from conduct that occurred on different occasions, they were not for the "same conduct" and thus do not merge.
 IX. Conclusion {¶ 66} Having overruled each assignment of error, we affirm the trial court's judgment.
JUDGMENT AFFIRMED. *Page 29 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.
[1] As an aside, there is a considerable body of case law and commentary that suggests the corpus delicti rule "has out lived its usefulness" and should be abandoned in favor of a trustworthiness analysis focusing upon the reliability of the confession. See for example Van Hook, supra, at 261; State of North Carolina v. Parker
(1985), 315 N.C. 222, 337 S.E.2d 487, citing other courts and commentators; State v. Hafford, 252 Conn. 274, 746 A.2d 150; State v.Lucas (1959), 30 N.J. 37, 152 A.2d 50; and State of Hawaii v.Yoshida (1960), 44 Haw. 352, 354 P.2d 986. However, we leave that question for another day and perhaps, another court. *Page 1