[Cite as *State v. Colonel*, 2023-Ohio-3945.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

STATE OF OHIO,                                     :

    Plaintiff-Appellee,                          : CASE NO. 23CA1168

v.                                                :

DARRYLL COLONEL,                                   : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.                         : **RELEASED 10/25/2023**

_____

APPEARANCES:

Brian T. Goldberg, Cincinnati, Ohio, for appellant.

David Kelley, Adams County Prosecuting Attorney, and Aaron H. Haslam, Mark R. Weaver, and Ryan M. Stubenrauch, Assistant Prosecuting Attorneys, West Union, Ohio, for appellee.

_____

HESS, J.

{¶1} Darryll Colonel appeals his conviction for rape and gross sexual imposition. For his first assignment of error, Colonel contends that the trial court erred when it allowed his videotaped confession that he committed gross sexual imposition to be played for the jury because the state failed to produce independent evidence of the corpus delicti of gross sexual imposition. However, the state presented some evidence outside of his confession that tended to prove some material element of gross sexual imposition. It presented evidence that Colonel laid down in the victim's bed, removed his pants, and engaged in a variety of sexualized behaviors while the victim was significantly impaired on medication. We overrule Colonel's first assignment of error.

{¶2} Second, Colonel contends that the trial court committed plain error when it

allowed the expert to give her opinion on the veracity of the victim's statement. He argues that the expert's testimony that the victim's statements were consistent with inappropriate sexual conduct was vouching. We find that according to the trial transcript, the expert never gave her opinion about the victim's statement. However, assuming the jury construed the expert's testimony in such a manner, we find that it was permissible bolstering, not vouching. We overrule Colonel's second assignment of error.

{¶3}   In his third assignment of error, Colonel contends that the trial court committed plain error by allowing the state to play the victim's interview from the treatment center in its entirety because only a portion of the interview was for medical diagnosis or treatment. We find that it was part of Colonel's trial counsel's trial strategy to ask the victim about each of the topics that Colonel claims should have been redacted from her interview. Because Colonel elicited this testimony directly from E.V. at trial, any redactions of them from the interview would have had no impact on the trial outcome. Regardless of whether they were redacted from the interview, the jury would have learned of these topics from Colonel's cross examination of the victim. We overrule Colonel's third assignment of error.

{¶4}   Fourth, Colonel contends that the trial court committed plain error when it failed to include the definition of the phrase "know or have reasonable cause to believe" in its jury instructions as it relates to the element that he knew or had reasonable cause to believe E.V. was substantially impaired. We find that "know or have reasonable cause to believe" is not a technical phrase nor does it have a meaning not generally understood by the average juror. The trial court instructed the jury on all elements that must be proved to establish the crimes and it did not err when it did not define a common-sense phrase. We overrule Colonel's fourth assignment of error.

{¶5}   In his fifth assignment of error, Colonel contends that his convictions for rape and gross sexual imposition were not supported by sufficient evidence and were against the manifest weight of the evidence. He argues that there was insufficient evidence that the victim was substantially impaired. We find that Colonel's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The state presented sufficient evidence through the testimony of the victim and Colonel's confession to allow any rational trier of fact to find all the essential elements of the crime proven beyond a reasonable doubt. And after reviewing the entire record, we find that the jury did not clearly lose its way or create a miscarriage of justice such that reversal of the conviction is necessary. We overrule his fifth assignment of error.

{¶6}   In his sixth assignment of error, Colonel contends that he received ineffective assistance of counsel because his trial attorney did not object to any of the matters he assigned as his first four assignments of error. However, we find no merit to any of those assignments of error and the law does not require counsel to take a futile act. We overrule Colonel's sixth assignment of error.

{¶7}   Finally, Colonel contends that the cumulative effect of his trial counsel's errors denied him of a fair trial. Because we find no merit to any of Colonel's assigned errors, we reject his argument that the cumulative error doctrine requires a new trial. We overrule Colonel's seventh assignment of error.

{¶8}   We affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶9}   In January 2022, an Adams County Grand Jury indicted Colonel with one count of rape in violation of R.C. 2907.02(A)(1)(c), a first-degree felony, and one count of gross

sexual imposition in violation of R.C. 2907.05(A)(5), a fourth-degree felony. Colonel pleaded not guilty.

{¶10} The case proceeded to a jury trial which produced the following evidence. The victim E.V. testified that in November and December 2021 she was 16 years old and living in West Union, Ohio with her aunt, two male cousins both in their late 20s, and a pet dog. One of the cousins she was living with was the defendant Darryll Colonel. On December 17, 2021, E.V. had been sick for three days, her whole body was aching, and she was taking a medication, Seroquel, which made it difficult for her to concentrate or stay awake. She testified that Seroquel made her tired, drowsy, and want to go to bed when she took it. She was "pretty much out of it" most of the day. Her aunt and her other male cousin were out of the house at work. E.V. and Darryll Colonel had been playing video games in the living room with another relative, but E.V. could not stay awake and fell asleep on the living room floor. She woke up at about 6:45 p.m. and went to her bedroom, which was next to the living room.

{¶11} E.V. testified that after she went into her bedroom, she took her glasses off and laid down in bed. Colonel followed her into her room, told her to scoot towards the wall, and laid down in the bed beside her. E.V. testified that it was unusual for Colonel to lay down in her bed because he had his own bedroom. E.V. fell back asleep, but shortly thereafter she woke up to the sounds of Colonel moving the trashcan away from her bedroom door so that the door would close completely. E.V. asked Colonel what he was doing because he knew she liked to sleep with the bedroom door open. Colonel told her he was making the room darker. E.V. testified that she was feeling very tired. E.V. fell in and out of sleep twice while Colonel was in her room; when she was awake, "I was like up but not aware of what was going on." The dog started scratching at the door to be let inside the bedroom. Colonel got

up to open the door to let in the dog. E.V. testified that when he got up to open the door for the dog, she saw from the flash of light from the door opening that Colonel had removed his pants. E.V. testified that after he let the dog in, Colonel got back into bed and said, "If you help me with something, I'll help you with something." E.V. did not know what Colonel meant and when she asked him, he did not respond.

{¶12} E.V. testified that she thinks she must have fallen back to sleep because she did not remember anything more for about the next ten minutes. At some point Colonel told her to kiss him and she said, "no." After she told him no, he just laid there. Then he told her to take her pants off and when she refused, Colonel began forcing her pants down. E.V. testified that at one point she woke up and Colonel had inserted his finger into her vagina. She told him he was hurting her and he responded by being more forceful. E.V. testified that she felt scared and believed that Colonel would hurt her more if she did not listen to him. To leave the room, E.V. would have had to go over the top of Colonel to get out of bed and out of the room. At some point E.V. remembered telling Colonel that she needed to use the bathroom. Colonel removed his finger for a few minutes but then reinserted it into her vagina. E.V. also testified that at some point Colonel brought the dog up to her, held its head down by her vagina, and told the dog to lick her vagina. E.V. testified that she fell back to sleep for a while and then woke up to a very sharp pain in her vagina, a wet and coldness, and a feeling of something "release." At that point E.V. again told Colonel she needed to use the bathroom and then got up, left the room, and went into the bathroom. E.V. said it was approximately 8:45 p.m. when she left her bedroom to go to the bathroom. While in the bathroom, E.V. texted her sister and told her that she needed to talk to her urgently. Her sister did not respond immediately. When E.V. left the bathroom, Colonel was standing in the

living room staring at her. E.V. went back into her bedroom, closed her door, turned on her light, laid down on her bed, and got her sister on the phone. Colonel came into her room and told her, "I'm sorry, I don't know what came upon me" and then he left her room again. E.V. testified that Colonel did not touch her anywhere other than her vagina.

**{¶13}** Cecilia Hicks testified that she was employed for 16 years as a social worker and forensic interviewer with the Mayerson Center, a child advocacy center at the Cincinnati Children's Hospital Medical Center. Hicks interviewed E.V. to assess her for possible medical treatment and diagnosis. That interview was videotaped and a redacted version was played for the jury. E.V.'s interview statements were consistent with her trial testimony. However, in addition to E.V.'s testimony that Colonel told her to kiss him on the lips, during her interview with Hicks, E.V. stated that Colonel told her to kiss his penis, "At first he told me to kiss his dick and I told him no, and then he told me to kiss his lips and I told him no." After the redacted interview was played, the state asked:

> Q: Ms. Hicks, um, based upon your education, training, skill, and experience, and over 4,000 interviews as a social worker and forensic interviewer, and based upon the interview you conducted in this matter, do you have an opinion within a reasonable degree of certainty as whether [E.V.'s] statements during the interview were consistent with inappropriate sexual conduct?
>
> A: Yes.
>
> Q: I don't have any other questions at this time, Your Honor.

**{¶14}** Kenneth Dick, an investigator for the Adams County Prosecutor's Office, testified that he had been an investigator for approximately 24 years and an investigator for sexual assault cases for approximately 16 of those 24 years. Investigator Dick testified that he interviewed Darryll Colonel after learning of E.V.'s allegations that Colonel had sexually assaulted her. Colonel's interview was videotaped. Colonel first denied that anything had

occurred between him and E.V.; they just laid down together and fell asleep. But as the interview progressed, Colonel changed his story and admitted that he masturbated while he laid there. E.V. woke up and Colonel asked her to touch his penis and help masturbate him. Colonel stated that E.V. touched his penis but refused to masturbate him and Colonel did not force her to because she looked scared. Colonel stated that he had E.V. remove her shirt and he touched her bare breasts for about five minutes. Colonel also admitted that he had E.V. remove her pants and underwear and he inserted his finger into her vagina for about five minutes. Colonel explained to Investigator Dick that while he was touching E.V.'s breast and inserting his finger into her vagina, E.V. was "half out of it" because when she takes her medication, "she really doesn't know what's going on."

{¶15} The relevant portion of Colonel's interview was played for the jury. In it Colonel made statements consistent with those described by Investigator Dick's testimony. Additionally, in the interview Colonel states that he went back into E.V.'s room after she got out of the bathroom and apologized to her, "we hugged. In her room, we hugged it out to tell her I was sorry * * * for doing anything." Investigator Dick asked how E.V. responded to his apology and Colonel responded:

> Darryll Colonel: She said that was it, she said it was fine, but you know how that is.
>
> Investigator Dick: So, you knew it wasn't fine with her?
>
> Darryll Colonel: Yeah.

{¶16} In the interview Colonel also stated that he asked E.V. to "help him out" by which he meant "would she help me out, touch me down there" and when he asked her that she pulled her hand away. Colonel also stated that he touched E.V.'s breasts, but did not lick or kiss them because, "she was still on a [sic] half out of it * * * She was still on half asleep

and such. She wasn't fully awake." "She drones in and outta sleep most often."

> Investigator Dick: So, while all this was going on, was she like kind outta her head and she didn't really know what was going on?

> Darryll Colonel: Mm-humm (affirmative).

Colonel denied that he used force on E.V., but conceded "I don't know if she knew what she was doing." Colonel told Investigator Dick that he did not finish masturbating because it "just didn't feel, feel right * * *. Touching [E.V.]."

{¶17} Colonel testified in his defense. He testified that on the day in question, he and E.V. played video games until about 3 p.m., when E.V. fell asleep. Colonel testified that he woke her up and told her to go to her room. E.V. went to her room and Colonel testified the he might have checked in on her, but he did not lay down in her room. The next time he saw her was around 6 or 7 p.m. that evening when E.V. woke up and came out of her room. Colonel testified that the first time he became aware of any issue was on December 29, 2021, when a social worker showed up at his house. Colonel testified that none of the admissions he made to Investigator Dick were truthful; he said those things because he was nervous and scared and thought he had to say something.

{¶18} The jury found Colonel guilty of rape and gross sexual imposition and the trial court sentenced him to an indefinite prison term of 10 to 15 years for rape and a prison term of 12 months for gross sexual imposition, to be served concurrently. Colonel was also classified as a Tier III sex offender. Colonel appealed.

## II. ASSIGNMENTS OF ERROR

{¶19} Colonel assigns seven errors for review:

> I. The trial court committed plain error by allowing portions of Mr. Colonel's statement that went to the charge of gross sexual imposition to be played for the jury as there was no other

independent evidence of him having committed that offense.

II. The trial court committed plain error by allowing the expert witness to give her opinion on the veracity of the statement made by the alleged victim.

III. The trial court committed plain error by allowing the state of Ohio to play the interview from the Mayerson Center in its entirety.

IV. The trial court committed plain error by failing to define necessary terms in its jury instructions.

V. Mr. Colonel's convictions were not supported by sufficient evidence and are contrary to the manifest weight of the evidence.

VI. The trial court erred to the prejudice of Mr. Colonel's Sixth Amendment rights by entering judgment of conviction after a trial at which he received ineffective assistance of counsel for his defense.

VII. The cumulative effect of counsel's errors denied Mr. Colonel a fair trial and rendered their assistance ineffective.

### III. LEGAL ANALYSIS

#### A. Corpus Delicti of Gross Sexual Imposition

**{¶20}** In his first assignment of error, Colonel argues that his conviction for gross sexual imposition is barred by the corpus delicti rule. Under this rule, there must be some evidence outside of a confession tending to establish the corpus delicti before such confession is admissible. A court may not admit an extrajudicial confession unless the state has produced independent evidence of the corpus delicti of a crime. *State v. Carver*, 2020-Ohio-4984, 160 N.E.3d 746, ¶ 53 (4th Dist.).

**{¶21}** "The corpus delicti of a crime is essentially the fact of the crime itself." *State v. Hofer*, 4th Dist. Adams No. 07CA835, 2008-Ohio-242, ¶ 36. "This court has stated that the 'corpus delicti' of a crime is 'the body or substance of the crime and usually [has] two

elements: (1) the act itself, and (2) the criminal agency of the act.' " *State v. Cook*, 128 Ohio

St.3d 120, 2010-Ohio-6305, 942 N.E.2d 357, ¶ 23.

> [T]he Supreme Court of Ohio noted the historical origins of the corpus delicti rule were designed to protect an accused from being convicted of a crime that never occurred. The court stated that, in light of the "vast number of procedural safeguards protecting the due-process rights of criminal defendants, the *corpus delicti* rule is supported by few practical or social-policy considerations." Accordingly, there is "little reason to apply the rule with a dogmatic vengeance." The burden upon the state to provide some evidence of the corpus delicti is minimal. (Citations omitted.)

*In re W.B. II*, 4th Dist. Highland No. 08CA18, 2009-Ohio-1707, ¶ 35; *see also State v.*

*Cutright*, 4th Dist. Ross No. 21CA3749, 2021-Ohio-4039, ¶ 49-51.

**{¶22}** The standard of proof required to meet the corpus delicti rule "is not a

demanding one." *State v. Van Hook*, 39 Ohio St.3d 256, 261, 530 N.E.2d 883 (1988).

> It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the corpus delicti, before such confession is admissible. The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case. It is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged.

*State v. Maranda*, 94 Ohio St. 364, 114 N.E. 1038 (1916), paragraph two of syllabus.

**{¶23}** Colonel did not object to the admission of his audiotaped confession at trial so

he has forfeited all but plain error. *State v. Puckett,* 191 Ohio App.3d 747, 2010-Ohio-6597,

¶ 14 (4th Dist.). Colonel must establish: (1) that an error occurred, i.e., a deviation from a

legal rule; (2) that the error is a plain, i.e., an obvious defect in the proceedings; and (3) that

this obvious error affected substantial rights, i.e., affected the trial outcome. *State v.*

*Lykins,* 2017-Ohio-9390, 102 N.E.3d 503, ¶ 5 (4th Dist.).

**{¶24}** Here, the record contains evidence to satisfy the corpus delicti of gross sexual

imposition. The state needed to only provide "some evidence outside the confession that

tends to prove some material element of the crime charged." *Maranda* at paragraph two of the syllabus. The elements of gross sexual imposition as charged include sexual contact (i.e., touching the erogenous zones of another for sexual arousal or gratification)  with E.V. where E.V.'s ability to resist or consent was substantially impaired because of a physical or mental condition and Colonel knows of the impairment. Specifically, the state submitted evidence through E.V.'s testimony that Colonel, who was her cousin, entered her bedroom, shut the door, removed his pants, laid down in bed beside her, and tried to forcefully remove her clothing. E.V. testified that Colonel inserted his finger into her vagina and tried to force the dog to lick her vagina. In her interview with Hicks, E.V. stated that Colonel tried to get her to kiss his penis. E.V. further testified that she was on medication that made her very tired and that she fell in and out of sleep while Colonel was in her room. This is all evidence sufficient to satisfy the prosecution's minimal burden under the corpus delicti rule of gross sexual imposition under R.C. 2907.05(A)(5). Colonel was in E.V.'s bed with his pants removed, engaging in a variety of sexualized behaviors while E.V. was significantly impaired on medication. The trial court did not err when it admitted Colonel's confession that he touched E.V.'s breasts.

{¶25}  We overrule Colonel's first assignment of error.

### B. Expert's Opinion about E.V.'s Interview Statements

{¶26}  Colonel contends that the trial court committed plain error when it permitted Hicks, the forensic interviewer, to give her opinion on the truthfulness of the statements E.V. made during her interview with Hicks.

{¶27}  To clarify, we note that Hicks was not asked if she thought E.V. was being truthful. And, contrary to the parties' assertions, the transcript does not contain Hicks's

opinion as to whether E.V.'s testimony was consistent with inappropriate sexual conduct. Hicks was only asked whether she has "an opinion * * * as whether [E.V.'s] statements during the interview were consistent with inappropriate sexual conduct?" Hicks responds, "Yes." Then the state says, "I don't have any other questions, Your Honor." In other words, Hicks testified that she has a professional opinion about whether E.V.'s statements were consistent with inappropriate sexual conduct, but she was never asked the follow-up: What is that opinion?

{¶28}  But, both Colonel and the state treat this assignment of error as if Hicks's "Yes" was in response to the question not posed at trial: Was it her professional opinion that E.V.'s statements were consistent with inappropriate sexual conduct? Colonel's appellate brief cites the record and quotes the question:

> In this case Ms. Hicks from the Mayerson Center was asked, "do you have an opinion within a reasonable degree of certainty as whether [E.V.'s] statements during the interview were consistent with inappropriate sexual conduct?" She responded in the affirmative. *Id.*

> The State's expert gave her opinion on the truthfulness of [E.V.'s] statement.

The state's appellate brief summarizes the testimony:

> Colonel next contends that Ms. Hicks, the expert witness, testified that EV was telling the truth. This is inaccurate. Instead, Ms. Hicks testified that EV's statements were consistent with inappropriate sexual conduct, a much different assertion.

{¶29}  We overrule this assignment of error on the ground that it is based on a faulty premise; despite Colonel's (and the state's) contention, Hicks never offered her opinion about E.V's statements.[1] Additionally, even if we assume that the jury interpreted Hicks's response

---

[1] Under App.R. 9(E), any differences as to whether the record truly discloses what occurred at trial could have been submitted to the trial court and the record made to conform to the truth.

in the manner argued by the parties, Colonel did not raise this objection during trial and forfeited all but plain error. *State v. Lawson,* 4th Dist. Highland No. 14CA5, 2015-Ohio-189, ¶ 14. For the reasons that follow, we find no merit to Colonel's claim.

**{¶30}** "An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." *State v. Boston*, 46 Ohio St. 3d 108, 545 N.E.2d 1220 (1989), syllabus (modified on other grounds) (case involved a two-and-one-half year old child incompetent to testify, expert could not testify that she believed child was not fantasizing and had not been programmed to make accusations against the father because this type of expert testimony, in effect, declared that the child was truthful in her statements, *Id.* at 128). However, an expert is permitted to testify "on the ultimate issue of whether sexual abuse has occurred in a particular case" because it is helpful to the jury and "therefore admissible * * * ." *State v. Stowers*, 81 Ohio St. 3d 260, 261, 1998-Ohio-632, 690 N.E.2d 881, quoting *State v. Gersin*, 76 Ohio St.3d 491, 494, 668 N.E.2d 486 (1996), citing *State v. Boston, supra.* In *Stowers*, the Court distinguished "between expert testimony that a child witness is telling the truth and evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that a child *has* been abused." (Emphasis sic) *Stowers* at 262. An expert can testify that "behaviors like recantation of accusations and delayed disclosure of incidents of sexual abuse are seen in children that have been sexually abused." *Id.* at 263. "Such testimony is permitted to counterbalance the trier of fact's natural tendency to assess recantation and delayed disclosure as weighing against the believability and truthfulness of the witness." *Id.*

**{¶31}** This court has previously explained that only statements "directly supporting the veracity of a child witness are prohibited under *Boston*." *State v. Lawson*, 2015-Ohio-189,

¶ 20. Here Hicks did not testify about the truthfulness of E.V.'s statements, but rather concluded that E.V.'s statements during the interview were "consistent with inappropriate sexual conduct." In *Lawson* we found this type of expert opinion testimony acceptable. "*Boston* does not prohibit testimony that assists the fact finder in assessing the child's veracity." *Id.* at 22. In *Lawson*, the forensic examiner testified that based upon her interview of the children, further medical and psychiatric evaluations were "indicated." *Id.* at ¶ 21. Lawson argued that this constituted impermissible vouching for the children's truthfulness because the examiner's belief that additional medical services were needed to treat them for sexual abuse was based solely on the children's statements during interviews. We rejected this argument and cited with approval *State v. Barnes,* 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, in which the court determined that the expert's testimony that the victim's statements were "consistent with inappropriate sexual contact" was admissible and did not constitute improper vouching. *Barnes* at ¶ 57.

> However, in the case at bar, Freihofer did not testify that she "believed" E.M. Instead, Freihofer testified that E.M.'s statements were "*consistent* with inappropriate sexual * * * contact[.]" (Emphasis added.) Although appellant claims the effect of Freihofer's testimony bolstered E.M.'s credibility, this court has held that "indirect bolstering of a victim's credibility is not the same as the direct rendering of an opinion as to a victim's veracity that was involved in *Boston.*" *State v. Cappadonia,* [12th Dist.] Warren App. No. CA2008–11–138, 2010–Ohio–494, ¶ 18. See, also, *State v. Stowers,* 81 Ohio St.3d 260, 1998–Ohio–632 (expert testimony that child victims' statements were "consistent with the problems experienced by children who had been sexually abused" was admissible and did not constitute improper vouching).
>
> Moreover, Freihofer repeatedly testified she did not interview alleged victims of sexual abuse for "truth or falseness," but rather to gather information to assess the child's medical and psychological needs. Freihofer testified she entered all forensic interviews with an "open mind," and stated she based her opinion on E.M.'s statements, as well as statements from an outside source, namely, E.M.'s mother, Kyle.

(First bracket sic.) *Barnes*, 2011-Ohio-5226, ¶ 57-58.

{¶32} Colonel acknowledges that the *Barnes* holding cuts against his argument but respectfully suggests that the *Barnes* holding is incorrect. "Allowing a state expert to tell a jury that a child's statement is consistent with sexual abuse is no different than telling a jury that the expert believes the statement. Both statements are meant to bolster the credibility of the alleged victim." However, the case law makes a distinction between an expert testifying that the victim is telling the truth (i.e., vouching) and testifying that the victim's statements are consistent with sexual abuse (i.e., bolstering). An expert may not testify that a child witness or victim is telling the truth, but the expert can provide testimony "which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that a child *has* been abused." (Emphasis sic.) *Stowers*, 81 Ohio St.3d at 262. "Bolstering is permitted, vouching is not." *State v. Svoboda*, 2021-Ohio-4197, 180 N.E.3d 1277, ¶ 93-94 (1st Dist.) (expert's testimony was permissible bolstering where she explained why behaviors like delayed disclosure and recantation occur in child sexual abuse cases); *State v. Mincey*, 2023-Ohio-472, 208 N.E.3d 1043, ¶ 46-47 (1st Dist.).

{¶33} Hicks testified that she interviewed E.V. to assess her for any possible medical treatment and diagnosis. During the course of the interview, E.V. and Hicks discuss the timing of E.V.'s disclosure of the assault. E.V. explained that she did not tell her aunt about it at all because she was afraid her aunt would feel burdened and would not believe her. E.V. also told Hicks she did not tell anyone other than her sister about it for approximately two weeks because she felt disgusted and as though she were to blame for the assault. After Hicks's interview of E.V. concluded, the state asked Hicks whether she had an opinion as to whether E.V.'s statements during the interview were consistent with inappropriate sexual conduct and Hicks responded affirmatively. Hicks's testimony is permissible because she did not testify

that she believed E.V. or that E.V. was telling the truth. Hicks did not vouch for E.V.'s veracity. Rather, she provided "additional support for the truth of the *facts testified to* by the child, or which assists the fact finder in assessing the child's veracity." (Emphasis sic.) *Stowers* at 263; *Svoboda* at ¶ 93.

**{¶34}** Finally, even if we assume that Hicks's testimony was improper, E.V. testified at trial and was subjected to cross examination by Colonel. Because of E.V.'s detailed testimony, Colonel cannot show plain error because he cannot establish that the trial outcome would have clearly been different had Hicks's testimony been excluded. *Lawson*, 2015-Ohio-189, ¶ 23. The jury could have independently assessed E.V.'s credibility and had little difficulty in finding Colonel guilty based upon her testimony alone.

**{¶35}** We overrule Colonel's second assignment of error.

### C. The Victim's Interview

**{¶36}** In his third assignment of error, Colonel contends that only a certain portion of E.V.'s interview with Ms. Hicks at the Mayerson Center was used for medical diagnosis and treatment. He contends that there were certain portions that had nothing to do with diagnosis and treatment and should have been excluded as inadmissible hearsay. He concedes that he did not object at trial and must show plain error occurred. However, he fails to argue that the trial outcome would have differed had the state redacted these segments of the interview – nor can he given that he elicited all of this same testimony from E.V. during cross-examination.

**{¶37}** Out-of-court statements made for the purposes of medical diagnosis or treatment are hearsay, but are admissible in court under the hearsay exception provided in Evid.R. 803(4):

(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

We have previously explained that forensic interviews may include questions and answers that go beyond what is necessary to conduct a basic physical examination, because "even those [questions] tangential or unrelated to the physical effects of the abuse" reasonably assist subsequent medical professionals "with the information necessary to prescribe a proper course of physical and *mental* treatment for the child." (Emphasis sic.) *State v. Knauff*, 4th Dist. Adams No. 10CA900, 2011-Ohio-2725, ¶ 32. Hicks explained that she attempts to explore a number of medically relevant areas during the interview such as the types of contact that occurred, whether the victim has safety and bodily concerns, and questions to assess mental health issues.

**{¶38}**  Colonel identifies three areas of questioning that he believes went beyond that necessary for diagnosis and treatment: (1) questions about Colonel moving the trashcan around; (2) E.V.'s use of the bathroom and discussions with her sister; and (3) E.V.'s discussion about telling of the abuse to a friend. However, Colonel cross-examined E.V. about the statements she made to Hicks at the Mayerson Center. His cross-examination occurred before the state offered E.V.'s interview into the record. During cross examination Colonel elicited testimony about the trashcan, the use of the bathroom, E.V.'s discussions with her sister, and her disclosure of the abuse to her friend. Colonel directly references E.V.'s interview at Mayerson and asks her a number of questions specifically about the statements she made about the trashcan:

Q: Just kind of, uh, stated that, that the trashcan in your room was moved two times.

A: Yes.

Q: The first time was when?

A: Um, the first time was * * *.

Q: And you recall being interviewed with, uh, folks from the Mayerson Center, correct?

A: Yes.

Q: And your statement there, you've mention that your trashcan was directly beside your bed.

A: Yes.

Colonel's cross-examination about the trashcan went on for three pages in the trial transcript.

**{¶39}** Colonel also asked E.V. about her statements to Hicks about her use of the bathroom, her texts to her sister, and her disclosure of the abuse to her friend:

Q: And then after that was the second time that you told me, um that you had to go to the bathroom?

A: Yes.

Q: Right. Did he make a statement to you after you told him that?

A: Um, he said, put your clothes back on and then go to the bathroom.

Q: And did you do that?

A: Yes.

Q: And the bathroom was where?

* * *

Q: Okay. Um, I think at some point you, you said that you texted your sister?

A: Yes.

Q: Right. And then, uh, made a phone call to your sister?

* * *

Q: And when you went to the bathroom it was 8:45?

* * *

Q: Okay. You made the, the statement to your sister over the phone that something had happened, right.

A: I texted her and I said * * * .

Q: She called you?

A: Yes.

Q: Did you tell your sister over the phone about what happened?

A: At first, I couldn't really talk because I was scared of what just happened. * * *.

Q: Okay. And, uh, you know, did, did your sister or yourself go to the author, to the authorities that day?

A: No.

Q: And did you, uh, call anyone other than your sister?

A: No.

Q: How did this come to be known from, from anyone for too many? [sic]

A: Um, because I had texted my friend, um saying that it was kind of just like she knew something was wrong by the way, she by the way my text was. [sic]

Q: Mm-hmm. (affirmative)

A: And she was like, what's wrong? * * *.

Q: Okay. This friend that you told, she was still at the group home that you've been at previously?

**{¶40}** Because Colonel asked E.V. about each and every topic he complains should have been redacted from the interview, he cannot show plain error because he cannot establish that the trial outcome would have clearly been different had those statements been redacted from the interview. *Lawson,* 2015-Ohio-189, ¶ 23. The jury could have

independently learned about it all through Colonel's cross examination.

{¶41}  We overrule Colonel's third assignment of error.

### D. Jury Instructions

{¶42}  Colonel contends that the trial court committed plain error by failing to define necessary terms in its jury instructions. He argues that, with respect to the rape charge, the trial court failed to adequately instruct the jury that Colonel had to know or have reasonable cause to believe that her ability to consent or resist was substantially impaired. He contends that the trial court had to define "know or have reasonable cause to believe." He concedes he did not object and forfeited all but plain error.

{¶43}  "As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged and, where specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element constitutes error." *State v. Adams,* 62 Ohio St.2d 151, 154, 404 N.E.2d 144, 146 (1980). However, "a trial court's failure to separately and specifically charge the jury on every element of each crime with which a defendant is charged does not per se constitute plain error nor does it necessarily require reversal of a conviction. *Id.* "A defective jury instruction does not rise to the level of plain error unless the defendant shows that the outcome of the trial clearly would have been different but for the alleged erroneous instruction." *State v. Blevins*, 2019-Ohio-2744, 140 N.E.3d 27, ¶ 29 (4th Dist.). "[R]eversible error should not be predicated upon one phrase or one sentence in a jury charge; instead, a reviewing court must consider the jury charge in its entirety." *Id.* at ¶ 27. "[I]f an instruction correctly states the law, its precise wording and format are within the trial court's discretion." *Id.*

**{¶44}** Terms of common usage need not be defined for the jury. *State v. Gross,* 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 106. "A trial court need not define all terms to a jury; generally, it defines only those 'technical and legal terms which have a meaning not generally understood by the average juror.' " *State v. Caver*, 8th Dist. Cuyahoga No. 91443, 2009-Ohio-1272, ¶ 84 "[W]hile '[i]t is especially important for courts to define technical terms, * * * courts should limit their definitions where possible to those provided by the legislature to avoid confusion and unnecessary appellate challenges.' " Therefore, "[i]f the term is of general import and common usage, and the term is actually used in that sense, the failure to define it does not mandate a reversal." (Citations omitted.) *State v. Miller*, 2d Dist. Clark No. 2022-CA-58, 2023-Ohio-2508, ¶ 80 (finding no error in the trial court's failure to define "safe place unharmed" in kidnapping instruction).

**{¶45}** The elements of rape under R.C. 2907.02(A)(1)(c) are (1) engaging in sexual conduct with another (2) not the offender's spouse when (3) "[t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *." Here the trial court instructed the jury on each element of the crime of rape:

> Now counts one and two, the defendant is charged in count one with Rape. Before you find the defendant guilty, you must find beyond a reasonable doubt that on or about between December 16, 2021 and December 18, 2021 in Adams County, Ohio, the defendant, Mr. Darryll Colonel did engage in sexual conduct with an individual E.V. date of birth, September 24, 2005, not the spouse of the said Darryll Colonel * * * and the said individual's ability to resist or consent was substantially impaired cuz [sic] of a mental or physical condition or of advanced age. And the said, Darryll Colonel knew or had reasonable cause to believe that the minor's ability to resist or consent was substantially impaired because of a mental or physical condition or because of advanced age, all of which is alleged to be in violation of 2907.21(A)(1)(c) [sic].

{¶46} Colonel argues that "knows or has reasonable cause to believe" are terms that must be defined. He argues that "knows" should have been defined as "knowingly" such as when a person "acts knowingly." However, here the element "know" does not go to Colonel's actions and whether he "acted knowingly." Instead, it described the state of knowledge of his mind – did he know of the existence of a fact. Therefore, the definition of "knowingly" that he argues should have been given does not apply here. Because "know" is a simple, nontechnical term, we find that the jury could have properly applied the term by using its common, ordinary meaning. Accordingly, we do not find that the trial court committed any error, let alone plain error, by failing to define the term "know" in the jury instructions.

{¶47} Colonel also argues that the trial court should have defined the phrase "reasonable cause to believe" as it relates to Colonel's knowledge of E.V.'s impaired state. The Ohio Jury Instruction 417.37 provides a definition for the phrase "reasonable cause to believe" and Colonel argues it should have been given here. That instruction simply tells the jury to put themselves in the position of Colonel with his knowledge, circumstances, and conditions and consider E.V.'s conduct and words and determine whether a person of ordinary prudence and care would believe E.V. was substantially impaired. This is an instruction in common sense. Again, we find that "reasonable cause to believe" is not a technical phrase nor does it have a meaning not generally understood by the average juror.

{¶48} The Eighth District Court of Appeals recently determined that the phrase "knew or had reasonable cause to believe" in a rape case involving substantial impairment did not need to be defined for the jury:

> We find nothing in this case that would mandate reversal due to the trial court's failure to define "knew or had reasonable cause to believe" for the jury. The language was used in the jury instruction in the common sense. The jury apparently understood the terms used; it did not request clarification or

definition, and appellant does not explain what incorrect meanings the jury could have attributed to "knew or had reasonable cause to believe."

*State v. Virostek*, 8th Dist. Cuyahoga No. 110592, 2022-Ohio-1397, ¶ 71. Likewise, here the language used in the jury instruction was common sense, the jury apparently understood the phrase as it did not ask for clarification or definition, and Colonel does not explain what sort of confused incorrect meaning the jury could have attributed to the phrase.

{¶49} We overrule Colonel's fourth assignment or error.

### E. Sufficiency of the Evidence and Manifest Weight of the Evidence

{¶50} Colonel contends for his fifth assignment of error that the evidence in this case did not support his conviction for rape and gross sexual imposition. Specifically, he challenges the element of both of those crimes that required the state to prove that E.V. was substantially impaired. He also contends that, without his videotaped confession, there was insufficient evidence that he committed gross sexual imposition. However, because we overruled his assignment of error challenging the admission of his confession under the corpus delicti rule, his confession that he fondled E.V.'s breasts for five minutes was admissible evidence. Thus, we find that the state proved this element of his gross sexual imposition conviction. We only review his argument on the element of substantial impairment as it relates to his rape and gross sexual imposition convictions.

### 1. Standard of Review

#### a. Sufficiency

{¶51} "When a court reviews the record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

doubt.'" *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Bennington,* 2019-Ohio-4386, 148 N.E.3d 1, ¶ 11 (4th Dist.).

**{¶52}** An appellate court must construe the evidence in a "light most favorable to the prosecution." *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). Further, "[t]he court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 22, citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132; *State v. Lodwick*, 2018-Ohio-3710, 118 N.E.3d 948, ¶ 9 (4th Dist.). Thus, "a reviewing court is not to assess 'whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.'" *State v. Davis*, 4th Dist. Ross No. 12CA3336, 2013-Ohio-1504, ¶ 12, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997) (Cook, J., concurring). Rather, a reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

### b. Manifest Weight

**{¶53}** In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage

of justice that reversal of the conviction is necessary. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. To satisfy this test, the state must introduce substantial evidence on all the elements of an offense, so that the jury can find guilt beyond a reasonable doubt. *See State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304, syllabus; *State v. Harvey*, 4th Dist. Washington No. 21CA3, 2022-Ohio-2319, ¶ 24. Because a trier of fact sees and hears the witnesses, appellate courts court will also afford substantial deference to a trier of fact's credibility determinations. *State v. Schroeder*, 2019-Ohio-4136, 147 N.E.3d 1, ¶ 61 (4th Dist.).

2. Elements of Substantial Impairment and
Analysis of the Sufficiency and Manifest Weight of the Evidence

{¶54} The state is required to prove for both rape and gross sexual imposition the following substantial impairment element:

> The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

R.C. 2907.02(A)(1)(c); R.C. 2907.05(A)(5).

{¶55} The state proved through E.V.'s testimony and Colonel's confession that E.V. was substantially impaired due to medication and that Colonel knew it. E.V. testified that she was taking a medication, Seroquel, which made it difficult for her to concentrate or stay awake. She testified that the medication made her tired, drowsy, and want to go to bed when she took it. She was "pretty much out of it" most of the day. Colonel also told the investigator during his interview that E.V. had taken medication and was "half out of it" because when

she takes her medication, "she really doesn't know what's going on." Colonel also stated that he knew that E.V. was falling in and out of sleep during the ordeal, "she was still on a [sic] half out of it * * * She was still on half asleep and such. She wasn't fully awake." "She drones in and outta sleep most often."

> Investigator Dick: So, while all this was going on, was she like kind outta her head and she didn't really know what was going on?

> Darryll Colonel: Mm-humm (affirmative).

Colonel denied that he used force on E.V., but conceded "I don't know if she knew what she was doing."

{¶56} We reject Colonel's contention that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the "substantial impairment" elements of rape and gross sexual imposition proven. There was evidence that E.V. had taken medication, was "out of it," was falling in and out of sleep, and really did not know what she was doing or what was going on. Colonel testified he knew this to be her state or condition. And, after our review of the record, and after we consider the evidence and testimony adduced at trial and all reasonable inferences therefrom, witness credibility, and the conflicts in the evidence or lack thereof, we do not believe that the jury clearly lost its way so as to create a manifest miscarriage of justice such that Colonel's conviction must be reversed and a new trial ordered.

{¶57} We overrule Colonel's fifth assignments of error.

### F. Ineffective Assistance of Counsel

{¶58} In his sixth assignment of error, Colonel contends that his trial counsel rendered ineffective assistance by (1) failing to object to the admission of Colonel's recorded

confession of gross sexual imposition because it should have been barred under the corpus delicti rule; (2) failing to object to the "vouching" of the expert witness; (3) failing to object to hearsay statements E.V. made during the forensic interview; and (4) failing to object to the jury instructions.

**{¶59}** To prevail on an ineffective assistance claim, a defendant must show: "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Failure to satisfy either part of the test is fatal to the claim. *Strickland* at 697. The defendant "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.E. 83 (1955); *State v. Conant,* 4th Dist. Adams No. 20CA1108, 2020-Ohio-4319, ¶ 28.

**{¶60}** We have determined that none of the matters that Colonel argues his counsel should have objected to were errors. The state presented some evidence outside of his confession that tended to prove some material element of gross sexual imposition; his confession was admissible. The expert engaged in bolstering, not vouching. As part of his cross-examination strategy, Colonel's trial counsel elicited testimony from E.V. on all of the

topics that Colonel alleged were hearsay and should have been redacted from the interview. And, the trial court did not err when it did not define the phrase "knows or has reasonable cause to believe" as part of the element of the crime in the jury instructions.

**{¶61}** Because none of the assignments of error Colonel raised are meritorious, his counsel's objections to them would have been futile. "The law does not require counsel to take a futile act." *Conant* at ¶ 30. Colonel's counsel's performance was not deficient for failing to make objections to his confession, the expert witness's testimony, portions of E.V.'s interview, or the jury instructions. We overrule Colonel's sixth assignment of error.

### G. Cumulative Errors

**{¶62}** For his final assignment of error, Colonel contends that his conviction should be reversed under the cumulative error doctrine.

**{¶63}** Under the cumulative-error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995), citing *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus; *State v. Ruble*, 2017-Ohio-7259, 96 N.E.3d 792, ¶ 75 (4th Dist.). "Before we consider whether 'cumulative errors' are present, we must first find that the trial court committed multiple errors." *State v. Smith*, 2016-Ohio-5062, 70 N.E.3d 150, ¶ 106 (4th Dist.), citing *State v. Harrington*, 4th Dist. Scioto No. 05CA3038, 2006-Ohio-4388, ¶ 57.

**{¶64}** The cumulative error doctrine does not apply where the defendant "cannot point to 'multiple instances of harmless error.' " *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 148 ("And to the extent that Mammone more broadly invokes

the doctrine of cumulative error, that doctrine does not apply because he cannot point to 'multiple instances of harmless error.' "); *State v. Fannon*, 2018-Ohio-5242, 117 N.E.3d 10, ¶ 124-125 (4th Dist.); *State v. Thacker*, 4th Dist. Lawrence No. 19CA18, 2021-Ohio-2726, ¶ 69-71.

**{¶65}** Colonel argues that cumulative errors violated his constitutional right to a fair trial. However, because we found no errors, the cumulative error doctrine does not apply. *State v. Mammone,* 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 173; *State v. Maxwell,* 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 253 (doctrine of cumulative error is not applicable where there are not numerous instances of trial-court error and defendant was not prejudiced by any error at the trial or penalty phase of the proceedings); *State v. Ludwick*, 4th Dist. Highland No. 21CA17, 2022-Ohio-2609, ¶ 53-57 (cumulative error doctrine does not apply where there was only one harmless error found); *State v. Spring*, 2017-Ohio-768, 85 N.E.3d 1080, ¶ 59 (7th Dist.) (cumulative error doctrine does not apply to one or two minor errors).

**{¶66}** We overrule Colonel's seventh assignment of error.

## IV. CONCLUSION

**{¶67}** We overrule Colonel's seven assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed. Appellant to pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


                                                        For the Court




                                                        BY:_____
                                                             Michael D. Hess, Judge


## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.